**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| EDWARD S. WILSON | CIVIL ACTION |
| VERSUS | 13-00813-SDD-SCR |
| M. SERGEANT MARCUS HALE AND LIEUTENANT CHRIS CARROWAY | |

**RULING**

This matter is before the Court on a *Motion for Summary Judgment* filed by Defendants, Master Sergeant Marcus Hale and Lieutenant Chris Carraway.[1] Plaintiff, Edward S. Wilson, has filed an *Opposition*[2] to which Defendants have filed a *Reply*.[3] For the following reasons, Defendants' *Motion* shall be denied.

**I.    BACKGROUND**[4]

Edward S. Wilson ("Wilson") is an inmate at Dixon Correctional Institute ("DCI") in Jackson, Louisiana. Wilson filed this action pursuant to 42 U.S.C. § 1983 against Defendants, M. Sgt. Marcus Hale and Lt. Chris Carraway, complaining that they violated his Fourth and Eighth Amendment by using excessive force against him on the morning of October 21, 2012, while he was being escorted from the DCI infirmary back to his cell

---

[1] Rec. Doc. 54. Based on Lt. Carraway's *Affidavit*, it appears that his name is misspelled in the caption. The Court will use the corrected spelling throughout its *Ruling*.
[2] Rec. Doc. 56.
[3] Rec. Doc. 57.
[4] The facts are drawn from the summary judgment record, which includes, among other things, Plaintiff's declaration, affidavits from M.Sgt. Marcus Hale, Lt. Chris Carraway, Sgt. Regina McCray, and Dr. Angelo Anthony Tarver, M.D., certified copy of Administrative Remedy Procedure records, DCI Disciplinary Reports, Department of Public Safety and Corrections Unusual Occurrence Reports, and medical reports. The Court does not consider as evidence allegations from Plaintiff's *Complaint* or *Amended Complaint*. See, *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence.").

DM 27501

in Cell Block B of Unit 2.⁵ The parties have presented different versions of the events that transpired and shall be addressed in turn.

Wilson attests that on the morning of October 21, 2012, he was in the last position in a line of inmates being escorted by Defendant M.Sgt. Hale from the DCI infirmary back to his cell. Wilson claims that M.Sgt. Hale ordered him to walk faster to which Wilson responded that his shackles on his ankles limited in his movement. In response, M.Sgt. Hale proceeded to verbally threaten Wilson, stating that he would physically harm Wilson when out of the view of other inmates and prison cameras.⁶ At some point thereafter, M.Sgt. Hale spoke into his radio, and then Defendant Lt. Carraway appeared, who grabbed Wilson under his arms and escorted him off of the Unit 2 walkway. Wilson offers the *Declarations* of several other inmates who witnessed the foregoing events as corroboration.⁷

Wilson claims that once they were off of the walkway and were *en route* to the Unit 2 Lieutenant's Office, Lt. Carraway threatened to use physical harm against him. In his declaration, Wilson states that Lt. Carraway slammed his head into the Cell Block B speaker box; clipped Wilson's shackled legs while he was walking through the t.v. room in Dorm Twelve causing Wilson to fall to the floor face first; and kneed Wilson in his back while he was on the ground in the t.v. room.⁸ Once they reached the Lieutenant's Office, Wilson attests that he was slammed into a chair, where Lt.

---

⁵ Wilson has also asserted state law claims under La. C.C. articles 2315, 2321, and 2317. The parties do not dispute that Unit 2, Cell Block B, "is a disciplinary detention cell block for inmates on extended lockdown." Rec. Doc. 56-1, No. 3.
⁶ Rec. Doc. 59-3, ¶¶ 2-3.
⁷ Rec. Doc. 56-2; 56-3; 56-4; 56-5; 56-6; 56-7; and 56-8. The Court notes that none of these inmates' *Affidavits* reflect that they witnessed any of the alleged excessive force exercised upon Wilson once he was off of the Unit 2 Walk.
⁸ Rec. Doc. 59-3, p. 3, ¶¶4-5.
DM 27501

2

Carraway choked, punched, and threatened him.[9] According to Wilson, M.Sgt. Hale also appeared in the Lieutenant's Office and began threatening him. Thereafter, M.Sgt. Hale proceeded to choke Wilson until he "temporarily blacked-out," and then punched him in his "chest/stomach area."[10] Wilson also claims M.Sgt. Hale "repeatedly" punched him "in [his] forehead, back of the head, and side of [his] head."[11] Wilson further attests that throughout the beatings, he made comments to both M.Sgt. Hale and Lt. Carraway.[12]

Wilson was examined by an unknown nurse at 3:00pm on October 21, 2012, but, according to Wilson, the nurse made no documentation of his injuries.[13] At 11:15pm, Wilson requested medical assistance because he had difficulty swallowing, was experiencing "bad headache[s]," and his entire body was sore.[14] The medical provider noted slight swelling to Wilson's forehead and posterior scalp.[15] Wilson's medical records indicate that he repeatedly sought medical treatment for the injuries he allegedly sustained.[16]

In response to Wilson's assertions, Defendants offer a much different account of the events from the morning of October 21, 2012, and have expressly refuted using any excessive force on Wilson.[17] While Defendant M.Sgt. Hale does not dispute that he was escorting Wilson from the infirmary back to the Cell Block B of Unit 2, he contends that Wilson began walking very slowly in what appeared to be an attempt to delay his

---

[9] Rec. Doc. 59-3, p. 4, ¶5.
[10] Rec. Doc. 59-3, p. 4, ¶6.
[11] Rec. Doc. 59-3, p. 4, ¶6.
[12] Rec. Doc. 59-3, pp. 4-5, ¶¶ 5-6.
[13] Rec. Doc. 54-4.
[14] Rec. Doc. 54-3, p. 88.
[15] Rec. Doc. 54-3, p. 88.
[16] Rec. Doc. 56-10.
[17] Rec. Doc. 54-9, p. 2 (M.Sgt. Hale also attested to "not see[ing] any type of excessive force used on inmate Wilson at any time by Lt. Carraway or any other prison official."). Rec. Doc. 54-10, p. 2

DM 27501

3

return to his cell. Due to his actions, M.Sgt. Hale ordered Wilson to move to the front of the line. M.Sgt. Hale attests that Wilson "became very agitated and began yelling profanities and threatening [him]," and Wilson told him that he should "'check his jacket' before ordering him around."[18] In response to Wilson's actions, M.Sgt. Hale summoned for assistance and Defendant Lt. Carraway responded. M.Sgt. Hale claims that, after he apprised Lt. Carraway of the situation, Lt. Carraway took Wilson by the elbow and escorted him away from the other inmates. M.Sgt. Hale attests he then continued returning the other inmates back to their cells.

Similarly, Defendant Lt. Carraway claims that he responded to M.Sgt. Hale's request for assistance on the Unit 2 Walk, and that upon his arrival he noticed that Wilson "was very agitated and shouting."[19] Lt. Carraway attests that he ordered Wilson to "calm down and stop shouting."[20] In response, Wilson used obscenities and warned Lt. Carraway that he "should check his disciplinary record."[21] As a result of his behavior and threats of physical violence, Lt. Carraway claims that he grabbed Wilson's right arm and escorted him away from the other offenders. Lt. Carraway asserts that this was the only force he used on Wilson, and that the level of force was required due to Wilson's actions and defiance.[22]

As Lt. Carraway and Wilson proceeded through the television room of Unit 2, Wilson "began tripping himself and attempting to fall on the ground."[23] Defendant Lt. Carraway claims that he then picked up Wilson, brought him to the Lieutenant's Office,

---

[18] Rec. Doc. 54-9, p. 1.
[19] Rec. Doc. 54-10, p. 1.
[20] Rec. Doc. 54-10, p. 1.
[21] Rec. Doc. 54-10, p. 1.
[22] Rec. Doc. 54-10, p. 2.
[23] Rec. Doc. 54-10, p. 2.

DM 27501

4

placed Wilson in a chair "located immediately inside the door", and instructed Wilson to "calm down."[24] According to Lt. Carraway, Wilson immediately began to calm down and remained in the Lieutenant's Office for approximately three minutes. Thereafter, Lt. Carraway escorted Wilson back to his cell without incident. Defendant M.Sgt. Hale has no recollection of entering the Lieutenant's Office as alleged by Wilson.[25]

Defendants also offer the *Affidavit* of Sgt. Regina McCray who was working in the Unit 2, Cell Block B Control Room on the morning of the alleged incident.[26] Sgt. McCray attests that the Control Room shares a common wall with the Lieutenant's Office. The common wall contains a clear two foot by six foot window, which Sgt. McCray attests is left open. Sgt. McCray claims that from the Control Room, she has an unobscured view through the window into the Lieutenant's Office, and because the window is left open, she is "able to hear everything that takes place in the Lieutenant's Office."[27] Sgt. McCray further attests, that while Wilson was in the Lieutenant's Office, she "did not hear any screaming, yelling, or fighting."[28] Sgt. McCray has "no recollection of [M.Sgt.] Hale entering the Lieutenant's Office" but if he had "and begun screaming and threatening [Wilson], [she] would most certainly have heard the encounter and would have summoned additional security."[29]

---

[24] Rec. Doc. 54-10, p. 2.
[25] Rec. Doc. 54-9, p. 2.
[26] Rec. Doc. 54-12.
[27] Rec. Doc. 54-12, p. 1.
[28] Rec. Doc. 54-12, p. 1.
[29] Rec. Doc. 54-12, p. 2.

## II. LAW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] "An issue is material if its resolution could affect the outcome of the action."[31] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[32] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[33] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[34] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[35]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[36] The Court must

---

[30] Fed.R.Civ.P. 56(a).
[31] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[32] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, at 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
[33] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, at 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552)).
[34] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, at 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[35] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, at 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[36] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

resolve all reasonable factual inferences in favor of the nonmoving party.[37] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[38] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without "any significant probative evidence tending to support the complaint.""'[39]

### B. Qualified Immunity

Defendants assert qualified immunity to Wilson's excessive force claims. The qualified immunity defense shields "a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law."[40] "To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred."[41] "The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the

---

[37] *Galindo v. Precision American Corp.*, 754 F.2d 1212, at 1216 (5th Cir. 1985).
[38] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, at 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[39] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, at 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).
[40] Atteberry v. Nocona General Hosp., 430 F.3d 245, 253 (5th Cir. 2005).
[41] *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 363 (5th Cir. 2007)(citing *Easter v. Powell*, 467 F.3d 459, at 462 (5th Cir. 2006)).

situation which he confronted."[42]  "A qualified immunity defense alters the usual summary judgment burden of proof."[43]  Once a defendant pleads the defense, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[44]

### C. Excessive Force

Wilson asserts a violation of his Eighth Amendment right to be free from cruel and unusual punishment in the form of excessive force.  "A claim for excessive force in violation of the Constitution requires (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable."[45]  This Court has previously set forth its analysis of Eighth Amendment excessive force claims as follows:

> A use of force is excessive and violates the Eighth Amendment to the United States Constitution when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 599 U.S. 34, 37 (2010), quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). Notwithstanding, not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, and the Eighth Amendment's prohibition against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort 'repugnant to the conscience of mankind.' *Hudson v. McMillian*, *supra*, 503 U.S. at 10, quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by guards 'does not lose his ability to

---

[42] *Moore v. Boeker*, 12-CV-00051, 2014 WL 4662398, at *3 (M.D.La. Sept. 18, 2014)(citing *Saucier v. Katz*, 533 U.S. 194, at 202 (2001)).
[43] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)(citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).
[44] *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008)(citing Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005)).
[45] *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

pursue an excessive force claim merely because he has the good fortune to escape without serious injury.' *Wilkins v. Gaddy*, *supra*, 559 U.S. 38.[46]

Therefore, in considering Eighth Amendment claims, evidence of the existence and extent of injuries is not dispositive.[47] Instead, such information is considered in conjunction with other factors, the *Hudson* factors, to determine whether the force used was excessive.[48] These additional factors include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[49]

### D.   Analysis

Defendants have presented the argument that Wilson's injuries are *de minimis* and do not support his excessive force claims. In support of their position, Defendants offer the *Affidavit* of Dr. Angelo Anthony Tarver, a physician with the Louisiana Department of Corrections, who attests that, based on his review of Wilson's medical records, it is his "opinion that the medical records do not indicate an excessive amount of force was used on inmate Wilson on October 21, 2012."[50] In response, Wilson has offered numerous medical reports, one indicating that Wilson had "slight swelling to [the] forehead and posterior scalp."[51] As previously discussed herein, the absence of serious injury does not preclude relief. Instead, the evidence of the existence and extent of injuries must be considered in conjunction with the other *Hudson* factors. When the

---

[46] *Moore v. Boeker*, 12-CV-00051, 2014 WL 4662398, at *4 (M.D.La. Sept. 18, 2014).
[47] *Haynes v. Parker*, 13-CV-00818, 2015 WL 1258112, at *3 (M.D.La. Mar. 17, 2015).
[48] *Id*, citing *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).
[49] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).
[50] Rec. Doc. 54-7, p. 2.
[51] Rec. Doc. 54-5. In Dr. Tarver's November 9, 2012, *Medical Progress Notes* he describes these earlier observations as "slight swelling of [the] forehead and occiput." Rec. Doc. 56-21.

Court turns its attention to the remaining *Hudson* factors, the Court finds that, due to the parties' competing accounts of the events surrounding the October 21, 2012 incident, there are significant material facts in dispute that cannot be resolved at the summary judgment stage as they will ultimately require credibility determinations. Due to these material facts in dispute, summary judgment on the Plaintiff's excessive use of force claim is inappropriate. Therefore, Defendants' *Motion* shall be denied.

### III. CONCLUSION

Accordingly, the *Motion for Summary Judgment*[52] filed by Defendants, Master Sergeant Marcus Hale and Lieutenant Chris Carraway, is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on July 27, 2015.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. 54.

DM 27501